HATCHER, *Appellant*, v. HATCHER *et al.*

Division Two, June 8, 1897.*

1. **Trusts**: CONFIDENTIAL RELATIONS: PARENT AND CHILD: EVIDENCE. In a suit to set aside a warranty deed from a mother to a son and son-in-law, alleged to have been obtained by fraud and undue influence, the burden rests upon plaintiff to show fraud if there was no confidential relation; but if there was a confidential relation the burden is on the defendants to show that the transaction was marked by absolute fairness.

2. ———: ———. Gifts or grants from a child to a parent are clothed with a confidential relation; but not so those from a parent to a child. The burden will not be cast upon such grantee unless the relation of trust and confidence is shown by other substantial evidence.

___

*NOTE.—Decided March 10, and rehearing denied June 8, 1897.

3. ——: LACHES. Plaintiff owning one hundred and sixty acres of land on which there was a mortgage of $3,232 deeded one hundred and twenty acres by quitclaim, and fourteen months later by a warranty, deed to her son and son-in-law upon condition that they would pay the mortgage and leave her the remaining forty acres unincumbered, which they did. The land had been offered for sale by her at $30 per acre for some years, was worth $30 at time of the sale. Plaintiff claimed that the agreement of the grantees was that they were to reimburse themselves and turn over to her whatever surplus was obtained by them at the sale. In a few years the land, because of the discovery of valuable mines, rose in price to $100, and her son sold forty acres for $5,000, and thirty acres for $3,000, and the son-in-law sold ten acres for $12,000, and another ten for $1,000, and besides these sales other parts of their purchase were leased for valuable royalties. But plaintiff stood by for nine years, entirely passive, and made no claim to any part of the money till the filing of this suit to set aside the deeds on the ground of fraud. *Held*, that plaintiff was guilty of such laches as to preclude her recovery.

*Appeal from Jasper Circuit Court.*—HON. W. M. ROBINSON, Judge.

AFFIRMED.

*Thomas & Hackney* for appellant.

(1) The trial court erred in finding for defendants and dismissing plaintiff's bill. The proof was overwhelming that the deeds sought to be set aside were obtained by the defendants from plaintiff by fraudulent representations and undue influence and the decree should have been for plaintiff. The defendant, B. F. Hatcher, was her son and had been her business adviser ever since the death of her husband and was her agent for the transaction of her business, and had in his hands at and before the making of the deeds the land in controversy, for sale and management as her agent. The defendant, Jacob Litteral, was her son-in-law, in whom she reposed absolute trust and confidence,

and was her chosen business adviser in this very transaction. She, being aged, infirm and uneducated, and harassed by the fear that her land would be taken from her under the mortgages, called upon them for advice and assistance. They accepted the trust and magnified the danger by falsely representing that· E. T. Webb threatened to and would foreclose the mortgages on her land in May, 1885, unless the ·debt was paid. They deterred her from seeking and obtaining disinterested advice, before dealing with her, and advised her that the best thing to do, and the only thing to do, was to turn the property over to them, jointly, to manage for her, agreeing to protect her interests in the land; and without paying a dollar, and without incurring any liability, they obtained from her deeds to land then worth, according to the most moderate estimate, $12,000. (2) A court of equity will enforce the trust thereby assumed by the defendants, and require them to account to the plaintiff for the management of her property, and declare them trustees, holding the title for her benefit. *Yosti v. Laughran*, 49 Mo. 594; *Bradshaw v. Yates*, 67 Mo. 228; *McClure v. Lewis*, 72 Mo. 314; *Hall v. Knappenberger*, 97 Mo. 511; *Rothenbarger v. Rothenbarger*, 111 Mo. 1; *Armstrong v. Logan*, 115 Mo. 465; *Bell v. Campbell*, 123 Mo. 1; *Bohm v. Bohm*, 10 Pac. Rep. (Col.) 790. (3) The defendants occupied toward plaintiff such a confidential and fiduciary relation that they will not be permitted to retain the fruits of a bargain entered into between her and them to her disadvantage, while the confidential relation existed. 1 Story's Eq. Jur. [10 Ed.], secs. 307, 308; 2 Pomeroy's Eq. Jur., sec. 956, pp. 1378, 1379; 1 Perry on Trusts [4 Ed.], secs. 209, 210; Kerr on Fraud and Mistake [1 Ed.], pp. 150 and 151; *Turner v. Turner*, 44 Mo. 537, 538; *Street v. Goss*, 62 Mo. 226; *Harper v. Harper*, 3 S. W. Rep. (Ky.) 5; *Crips v.*

*Towsley,* 73 Mich. 395; *Smith v. Cuddy,* 96 Mich. 562, 569; *Barnes v. Brown,* 32 Mich. 145.   (4)   The undue advantage taken by the defendants of the plaintiff in her helpless and distressed condition, is such, as to show unmistakably and beyond a reasonable doubt that her mind was so subdued, her free agency so destroyed, the just result of her judgment so mislead, confused and disturbed by the oppression of defendants, as to condemn and avoid the contract entered into by her.   *Bell v. Campbell,* 123 Mo. 1, and cases cited; 2 Pomeroy, Equity Jurisprudence [2 Ed.], sec. 948, p. 1364; Kerr on Fraud and Mistake [1 Ed.], p. 183.   (5)   A deed between parties, one of whom is subject to the influence of the other, should contain a fair and truthful statement of the transaction.   If the statement of the consideration is untrue, the instrument can not be upheld.   The party seeking to uphold it can not prove in order to sustain it, that the actual consideration was partly that represented in the deed and partly something else.   *Ahearne v. Hogan,* 1 Dru. 310; *Uppington. v. Bullen,* 2 Dru. and War. 184; *Clifford v. Turrell,* 1 Younge & C. Ch. 138; *Gibson v. Russell,* 2 Younge & C. Ch. 104; *Clarkson v. Hanway,* 2 P. Wms. 203; *Willan v. Willan,* 2 Dow. 274; *Cadwallader v. West,* 48 Mo. 483.

*McReynolds & Halliburton* for respondents.

(1)   Before a deed can be contradicted and the title to land can be affected, there should be not only clear and unequivocal evidence, but there should be no room for a reasonable doubt as to the facts relied on. *Johnson v. Quarles,* 46 Mo. 423; *Ringo v. Richardson,* 53 Mo. 385; *Worley v. Dryden,* 57 Mo. 233.   (2) When it is sought to establish a trust by parol evidence, the evidence to warrant a decree must be so clear,

definite and positive as to leave no reasonable ground of doubt as to the right to have the trust established. *Philpott v. Penn*, 91 Mo. 38; *Burdett v. May*, 100 Mo. 13; *King v. Isley*, 116 Mo. 155.   (3) Where a grantor in a deed for land seeks its cancellation and the re-investment of title on the ground of mistake, the burden of establishing the same is on such grantor, and before the relief asked for will be given, the fraud must be established by clear and convincing evidence. *Jackson v. Wood*, 88 Mo. 76; *Brown v. Foster*, 112 Mo. 297. (4) The relationship between plaintiff and defendants is not sufficient to show a relation of trust and confidence between plaintiff and defendants. *McKinney v. Hensley*, 74 Mo. 326; *Kirschner v. Kirschner*, 113 Mo. 290.   (5) It appears in this case that plaintiff knew all about the facts upon which she charges the defendants with making fraudulent misrepresentations; therefore she can not ask a rescission. *Warren v. Ritchie*, 128 Mo. 311.  (6) The plaintiff has been guilty of such laches in this case that she is not entitled to any relief. Bispham's Prin. Eq., sec. 360; *Bliss v. Pritchard*, 67 Mo. 181; *Landrum v. Bank*, 63 Mo. 56; *Moreman v. Talbot*, 55 Mo. 397; *Smith v. Washington*, 11 Mo. App. 525; *Kline v. Vogel*, 90 Mo. 247; *Taylor v. Short*, 107 Mo. 384; *Kroenung v. Goehri*, 112 Mo. 648; *Wendover v. Baker*, 121 Mo. 291.   (7) Defendants paid full value for the land at the time they received deeds for it, but mere inadequacy of price unaccompanied by fraud or unfair dealing is not a distinct ground for setting aside a sale. *Phillips v. Stewart*, 59 Mo. 491; *Stoffel v. Schroeder*, 62 Mo. 147; *Nelson v. Betts*, 21 Mo. App. 219.

*Thomas & Hackney* for appellant in reply.

(1) The delay of plaintiff in instituting her suit does not debar her of equitable relief, neither does it

in anywise impair the force of the testimony introduced to establish her cause. The plaintiff was impoverished, feeble in mind and body, ignorant of her rights in the premises and confided in the defendants, hoping with confidence that the defendants would voluntarily do that which was just and proper, and some part at least of what they had promised, and reluctant to believe that it would be necessary for her to take hostile steps and engage in strife and litigation with the defendants in order to procure from them that which was justly her due. Under such circumstances, nothing short of the statute of limitations would bar the plaintiff of the relief to which she is clearly shown to be justly entitled. *Wright v. Wright*, 37 Mich. 55; *Bell v. Campbell*, 123 Mo. 17; *Kelly v. Hurt*, 61 Mo. 466; *Bradshaw v. Yates*, 67 Mo. 232.

BURGESS, J.—This is a suit to set aside four deeds made by plaintiff to defendants, two to each one of them for sixty acres of land, in all one hundred and twenty acres, in Jasper county. The first two are quitclaim deeds made in March, 1885. The last two are warranty deeds made in May, 1886. The petition was filed January 31, 1894. It alleges that the deeds were obtained by fraud and undue influence on the part of defendants. The trial resulted in the dismissal of plaintiff's bill and a judgment in favor of defendants against her for costs. Plaintiff appealed.

On March 2, 1885, plaintiff was the owner of one hundred and sixty acres of land in Jasper county, one hundred and twenty of which is involved in this litigation. Defendant Benjamin F. Hatcher is her son, and the defendant Litteral is her son-in-law, having married her eldest daughter. At the time of the commencement of this suit plaintiff had seven living children,—three sons and four daughters,—the youngest

being about twenty-eight years of age. On May 4, 1877, plaintiff executed to her brother John C. Webb a mortgage on all of her land, one hundred and sixty acres, to secure the payment of a loan of $1,158 and on January 4, 1882, she executed to him another mortgage on the same land to secure the payment of an additional loan of $1,170.75. Both loans were evidenced by notes executed by her bearing ten per cent interest per annum. The total amount at the time of the execution of the deeds in question was $2,328.75 principal, with several years' interest past due.

John C. Webb died April 12, 1883, and his son E. T. Webb qualified as executor of his estate. His second annual settlement as such executor became due in May, 1885. E. T. Webb was desirous of settling up his father's estate, and plaintiff became impressed with the idea that she would have to sell the land in order to raise the money to pay off the deed of trust liens, or else all the land would be sold to satisfy them and pass out of the hands of the family. But there was no immediate danger of such a result, as the executor had no intention of foreclosing the deeds of trust until it was necessary to do so in the discharge of his duties as executor. As to whether this impression upon the mind of the plaintiff was created by the defendant B. F. Hatcher, or was caused by the surrounding circumstances, the evidence was conflicting. At any rate she had been for some time trying to sell the land, or a part of it, to satisfy the liens, and had been unable to do so. She offered it during the years of 1881, 1882, and 1883 at $30 per acre. She testified, in effect, that she was induced by the repeated importunities of Ben to convey the land to him and Litteral, with the expectation that they would sell enough of it to pay off the liens, and that she would get the balance, and

under this belief she was induced to convey the land to him and his codefendant Litteral.

Upon the other hand the evidence tended to show that she, of her own accord, proposed to Ben to take a deed for the one hundred and twenty acres in controversy and assume and pay off the liens and release the other forty acre tract to her, and that he declined to do so; that she then wrote or had written a letter to the defendant Litteral, who lived in Arkansas, asking him to come up to Webb City, where she resided, and see about the land; that upon receipt of the letter he did come, and remained at her house and Ben's a week or more before any arrangement was made with respect to it; that she proposed to defendants if they would pay off the liens and secure the release thereof from the forty not in suit, that she would deed to them the one hundred and twenty acre tract in question; that this Litteral first refused to do, but finally consented upon the condition that E. T. Webb, the executor, would carry the mortgages another year, and the land was divided and one half deeded to him, and one half deeded to Ben. Defendants then saw the executor who agreed to grant another year's indulgence on the debts then past due, and upon reporting this fact to the plaintiff, it was agreed between her and defendants that the defendants should divide the land to suit themselves, and that she would make them a quitclaim deed to it. Defendants then went to the office of H. H. Murray, a notary public, and had him prepare the deeds, and plaintiff thereafter in company with one of her daughters went to his office, and she signed and acknowledged them before him. The deeds were delivered and recorded and Litteral returned to his home in Arkansas.

When the time arrived at which the mortgage debts were to be paid it became necessary for defend-

ants to borrow the money to pay them, and for that purpose they were compelled to give a mortgage on the land to secure the money thus borrowed.    W. A. Daugherty, father-in-law of defendant Hatcher, was willing to let them have the money, but would not do so unless they first procured warranty deeds to the land from the plaintiff.    They then went to plaintiff and explained the situation to her, and she agreed to make the warranty deeds, one to each of them covering the same land contained in the quitclaim deeds. These deeds were drawn by Phil. Hannum, a notary public, who explained them to her and she signed and acknowledged them as her free act and deed.    This was in May, 1886, fourteen months after the quitclaim deeds had been executed and delivered.    And on May 5, 1886, each one of the defendants executed his note to Daugherty for $1,616 due in one year, and secured. same by deed of trust on his separate piece of land, making a total of $3,232, which they paid to Webb.  The mortgages were satisfied, and the other forty acres left to plaintiff clear of incumbrance.    Plaintiff had for years tried to sell this land at $30 and $35 per acre, and had been unable to do so.    From the time of the making of the deeds, in 1885, to the commencement of this suit in 1894, defendants have been in charge and control of the land, claiming and using it and its pro- ceeds as their own and paying the taxes, without any claim of any kind being made to the land or the pro- ceeds thereof by plaintiff or anyone for her.    For some years mining interests around Webb City had been dull.    In the spring of 1887 some new strikes started a mining boom and the prices of mining lands went up with great rapidity, and on July 6, 1887, defendant Hatcher sold one forty of his for $5,000, but plaintiff made no claim to any part of the money until the filing of the petition herein.

On September 12, 1887, defendant Litteral sold defendant Hatcher ten acres off his sixty for $1,000, and plaintiff laid no claim to any of that money. The next conveyance of any of this land was April 14, 1891. Defendant Litteral conveyed ten acres of his sixty to E. N. Perry for an expressed consideration of $12,000, but the plaintiff made no claim to any of this money or any of the land. And in 1892 Litteral leased another ten acres to Perry for mining for ten years at ten per cent royalty. On May 6, 1889, defendant Hatcher conveyed to Hannum and McElroy an undivided half interest in thirty acres, being twenty of his original sixty acres and the ten acres he bought from Litteral, for $3,000.

The value of the land for farming purposes at the time of the execution of the deeds by plaintiff to defendants was variously estimated by the witnesses at from $25 to $30 per acre. The land contained mineral deposits of zinc and lead, and on that account was very valuable, worth as some of the witnesses stated as much as $300 per acre. It had not been developed at that time, nor was there any evidence that defendants, or either of them, had knowledge of the existence of the mineral deposits, which were not developed until after the conveyances to them.

While the plaintiff was at the time of the execution of the deeds about sixty years of age, she had for many years been boarding miners, attending to her own domestic and business affairs, independent of the advice of others. Nor is there any indication of mental decay in her evidence, as it appears in the record. There was no consideration for the conveyance of the land by her to defendants, other than the release from the mortgage liens to her of the forty acres not in controversy. Other facts, should it be thought necessary, will be stated in the course of the opinion.

It is insisted by plaintiff that when all the facts and circumstances attending the execution of the deeds in question, the condition and relation of the parties, the nature and value of the property conveyed, are fairly considered, that plaintiff made out a clear case, which entitled her to equitable relief, even though a confidential relation was not shown to exist between her and defendants. If there existed no such confidential relation, the burden rested upon plaintiff to show that the deeds were obtained from her by imposition and fraud practiced upon her by defendants. Upon the other hand, if a confidential relation existed between them, the burden was thrown upon defendants to show that absolute fairness characterized the transaction in all of its essential details. There was no substantial evidence tending to show any relation of trust or confidence between plaintiff and defendants, other than that which usually exists between mother and child, and especially with respect to the relation between defendant Litteral and plaintiff; and such relation without more was not sufficient to cast the burden upon them of showing that the transaction was free from fraud or undue influence.

It is said in *McKinney v. Hensley*, 74 Mo. 326, that: "The cases of *Garvin's Adm'r v. Williams*, 44 Mo. 465; *Ford v. Hennessy*, 70 Mo. 580; *Bradshaw v. Yates*, 67 Mo. 221, and that class of cases to which we have been cited by counsel, are only applicable to gifts, grants or donations obtained by attorney from client, spiritual advisor from advisee, trustee from *cestui que trust*, parent from child, guardian from ward, and that class of transactions. They do not apply to cases of gifts, grants or donations from parent to child." There is therefore nothing disclosed by the record which seems to remove this case from the general rule which

places the burden upon him who makes an affirmative allegation of sustaining it by the evidence.

The weight of the evidence is to the effect that at the time of the execution of the deeds from plaintiff to defendants the market value of the land involved was no more, if that, than the amount of the mortgage liens, and that she, fearing her inability to sell it, or enough of it to pay them off, her purpose in conveying it to defendants was to relieve herself of the anxiety of the possible sale of the land under the mortgages and as a consequence its sacrifice and its total loss to her, and to save the forty acre tract. The allegations in the petition with respect to the false and fraudulent representations on the part of the defendant Hatcher as to the intention of E. T. Webb to sell under the deeds of trust, for the purpose of inducing her to convey to him and his co-defendant Litteral, in order that they might the more readily sell it or secure a loan upon it in order to pay off the deeds of trust, and, after reimbursing themselves for the money thus expended, that she was to have what was left, is not sustained by the evidence. On the contrary it was shown that it was upon her own solicitation that they agreed to take the land, subject to the mortgages, and to procure the release therefrom of the forty acre tract.

They knew nothing of the value of the land on account of its mineral deposits, for its mineral qualities had not been developed at that time, nor was it for many months thereafter. What has been said is in accordance with the finding of the court below who saw the witnesses upon the witness stand and heard them testify, which afforded him much better opportunities to pass upon the weight of the evidence than we have; and, even if the evidence slightly preponderated in favor of plaintiff we should be disposed to defer to that

finding, but in this case the judgment is fully justified by the evidence.

But even if the allegations of fraud and undue influence were sustained by the evidence, plaintiff was guilty of such laches in failing to assert a claim to or interest in the land, and to bring suit therefor, as to preclude her recovery in this case. It was nearly nine years from the time of the execution of the deeds to the time when this suit was instituted, during which time plaintiff lived within a short distance of the land, knew that a large portion of it had been sold by defendants at large prices, and other parts of it leased for mining purposes, was being worked and yielding large quantities of lead and zinc ore; that defendants were constantly receiving from their lessees royalty in large sums on the mineral output, yet she never at any time before the institution of this suit claimed any part of the purchase·money received by defendants or either of them from sales of the land or any part of the royalty received by them. It is evident from the facts disclosed by this record that this suit would never have been brought but for the discovery of mineral deposits on the land and by reason thereof its sudden increase in value. The facts upon this branch of the case bring it clearly within the rule announced in *Bliss v. Pritchard*, 67 Mo. 181, as follows:. "A delay which might have been of no consequence in an ordinary case, may be amply sufficient to bar the title of relief, when the property is of a speculative character, or is subject to contingencies. . . . . . . . If the property is of a speculative or precarious nature, it is the duty of a man complaining of fraud to put forward his complaint at the earliest possible time. He can not be allowed to remain passive, prepared to affirm the transaction if the concern should prosper, or to repudiate it if that should prove to his advantage." *Kline v. Vogel*, 90

Mo. 247; *Moreman v. Talbott*, 55 Mo. 397; *Smith v. Washington*, 11 Mo. App. 525; *Kroenung v. Goehri*, 112 Mo. 648; *Taylor v. Short*, 107 Mo. 384.

From these considerations it follows that the judgment must be affirmed. It is so ordered. GANTT, P. J., and SHERWOOD, J., concur.