SLAYBACK v. WITT ET AL.

[No. 18,202. Filed May 12, 1898. Rehearing denied Oct. 28, 1898.]

EVIDENCE.—*Decedents' Estates.*—In an action by heirs to set aside a conveyance of real estate made by the ancestor both parties are rendered incompetent as witnesses in their own behalf, as to any matters occurring prior to the death of the ancestor, by section 507, Burns' R. S. 1894. *p. 378.*

Slayback *v.* Witt *et al.*

DEEDS.—*Parent and Child.—Undue Influence.— Presumption.*—The fact that a woman ninety-one years of age conveyed her real estate to her son who had been kind and attentive to her during her old age will not raise the presumption of undue influence for the purpose of defeating the deed in the absence of any evidence of actual undue influence. *pp. 378-391.*

From the Boone Circuit Court. *Reversed.*

*Byron K. Elliott, William F. Elliott, Samuel M. Ralston, Michael Keefe* and *Reagan & Ryan* for appellant.

*Terhune & New,* for appellees.

McCABE, J.—The appellees sued the appellant to set aside a deed of gift by his mother, conveying to him 160 acres of land, and for partition thereof. A trial of the issues resulted in a finding and judgment in favor of the plaintiffs, over defendant's motion for a new trial.

The only error assigned, and not waived by the appellant, calls in question the action of the court in overruling the motion for a new trial. The parties to the action are the children and grandchildren and heirs of William Slayback, Sr., and Anna H. Slayback, husband and wife, late of Boone county, now deceased. All of said heirs were plaintiffs below except David E. Slayback, who was the sole defendant in the lower court, and the appellant here. The complaint was in four paragraphs. The first paragraph seeks to set aside the deed from Anna H. Slayback to appellant, David E. Slayback, purporting to convey the farm mentioned from said Anna to appellant, on the ground of the unsoundness of mind of the grantor. The second paragraph seeks to set aside said deed upon the ground of the fraud and undue influence exercised by the grantee in the procurement of said deed. The third paragraph seeks to set aside said deed upon the ground of unsoundness of

mind of the grantor, want of consideration, undue influence, and failure to deliver said deed. The fourth paragraph is for partition of said real estate between all of said heirs. Judgment setting aside the deed and of partition was accordingly rendered.

The grounds specified in the motion for a new trial are, among other things, that the finding of the court was contrary to law and unsupported by the evidence, and that the court erred in refusing to permit the defendant, David E. Slayback, to testify as a witness on his own behalf to the effect that he never requested his mother, Anna H. Slayback, to convey the land to him; and to the further fact that it was at her request and solicitation that he went to Lebanon, and requested the lawyer, Mr. Wesner, to come out to the farm where he and his mother lived together to write the deed. The court refused to receive appellant's testimony on objection made by the plaintiffs to his competency as a witness. The statute rendered both parties incompetent as witnesses in their own behalf, as to any matter which, as here, occurred before the death of the ancestor. Section 507, Burns' R. S. 1894 (499, R. S. 1881).

The principal reliance of appellant for a reversal is the insufficiency of the evidence to support the finding of the court. There is no reasonable ground furnished by the evidence to establish the unsoundness of the mind of Anna H. Slayback at the time she executed the deed in question. The court placed its finding in favor of the plaintiffs on the sole ground of the undue influence of said David over his mother, said Anna, and the consequent fraud arising therefrom; and the whole controversy in the briefs is as to whether the evidence was sufficient to establish such undue influence and consequent fraud of appellant in the procurement of said conveyance, the appellant

contending that the most favorable evidence for appellees was insufficient to establish such undue influence, and the appellees insisting.that it is.

The substance of the facts established by the evidence is: That William Slayback, Sr., husband of Anna H. Slayback, died intestate in Boone county, Indiana, in 1884, the owner of three farms, of 160 acres each, and left surviving him as his only heirs at law his widow, said Anna H. Slayback; Eliza A. Witt, a daughter, who was intermarried with Henry Witt; Mary J. Kersey, a daughter, intermarried with Lee Kersey; Sarah A. Click, only child and heir of Mary Kersey, a daughter, intermarried with Frank Click; William O. Cluster, only child and heir of Milan Cluster, a daughter; Lew W. Slayback, Milroy L. Slayback, Dora A. Copeland, Charles G. Slayback and Mary A. Slayback, children and heirs of William E. Slayback, Jr., a son of said William Slayback, Sr., deceased. That said Dora A Copeland is the wife of Lewis Copeland. That all of said children and grandchildren were made plaintiffs below and are appellees here, and they were all alike related to said Anna H. and William Slayback, Sr., her husband. That all of said children had married and left home, and were doing for themselves except appellant, David, who still remained at home with his parents, taking care of them as long as they lived, and he never married. Upon the death of William Slayback, Sr., which, as before stated, occurred in the year 1884, his estate was divided among his above named heirs, by arbitration, as follows: To the widow, Anna H. Slayback, the home farm of 160 acres, and her absolute claim of $500, to be paid by the appellant, David E. Slayback; to the appellant, David E. Slayback, a farm of 157 acres, and all the personal property belonging to said estate, subject to the claim of $500

to be paid to the widow, and the debts of said estate, except a mortgage indebtedness of $500 on the farm going to the other heirs; to all the other heirs a farm of 160 acres, subject to a mortgage of $500. There was no other indebtedness against said estate. This settlement was made in view of and taking into consideration advancements of about $1,800, that had been made to each child as they respectively came of age or married. But no such advancement was made to David. During the time that David and his father worked together, and after he became of age, David became the owner of certain real estate, the title to which was taken in the name of the father. In the arbitration above referred to the land held by and in the name of the father, which was in equity owned by David, was taken into account. At the time of the death of William Slayback, Sr., and long prior thereto, his family consisted of himself and wife, Anna H. Slayback, and David E. Slayback, appellant, a bachelor son, who was at that time about fifty years old. After the death of William Slayback, Sr., David and his mother resided together on the home farm, the land now in question, which had in the arbitration been set off to her, and they so continued to live until the death of the old lady, on January 14, 1894.

The evidence shows that David had been attentive and kind to his parents as long as they lived together, and that after his father's death his care, kindness, and respect for his mother's comfort and wishes had been remarkable. She had borne and reared a large family, and had very little education, being able to read print, but not able to write or read writing. Had been an excellent housekeeper and a good manager of such matters, but had no experience in business matters generally. She had good judgment of matters

within her sphere of action. She received a fall and injury to her hip or hips, so that for the last ten years of her life she had to walk on crutches. She was, on account of her old age, when the deed in question was made and signed, weak in body and mind, but the weakness of her mind came from old age and not from unsoundness of mind. A short time before the deed was made she had suffered a slight attack of apoplexy, but was able to go about as usual on her crutches, and to talk, when the deed was made. A lawyer by the name of Wesner, then living in Lebanon, but who shortly afterwards died, had been notified by David to come to the farm for some purpose. He, in company with one Titus, came, and on inquiry made by the hired woman at the Slayback residence who those men were, as they approached the house, David answered in the presence and hearing of his mother that they were the men that his mother had requested him to have come out, or something of that kind, to which she made no reply. Mr. Wesner and David went into an adjoining room, with the door open, and prepared the deed. When it was ready, Mr. Wesner invited David's mother in to sign it. She walked in, and remarked that she could not write, and requested Mr. Wesner to write her name, and she made her mark. She was then about ninety-one years of age, and died in about a year afterwards.

If the finding and judgment are to be upheld, it must be on the ground, as before remarked, that the deed was procured by the undue influence exerted by David over his mother in inducing her to make the same, because, as before remarked, there was no evidence of unsoundness of mind, and the finding of the trial court so treats the evidence. Neither is there any evidence of undue influence, unless that fact is requird by law to be presumed from the condition and situation of the

parties to the deed and the circumstances surrounding the transaction. Appellees' counsel urge with great ability and learning that such undue influence must be presumed from the circumstances mentioned, and if the relation of parent and child did not exist between the grantor and grantee in this case, there being no valuable consideration for the deed, the uniform current of authority everywhere would require us to presume that the deed was procured by undue influence. In other words, equity will overturn such a deed unless the presumption of undue influence arising from the circumstances mentioned is rebutted by affirmative proof that the grantee did not procure the deed by undue influence. This line of authority and adjudged cases, cited by appellees' learned counsel, vast in number, both English and American, are not applicable to the present case because of the relationship between the parties to the deed. It is true, some of the cases cited by appellees' counsel do sanction their contention that the rule is applicable to this case, but the great weight of modern authority is the other way.

It is true that a court of equity is by the settled law of this and other states required to, and it will, scan a transaction of the kind here in question with the utmost vigilance and scrutiny. But that is an entirely different thing from presuming the existence and actual exertion of undue influence from the circumstances mentioned. We have been referred to two cases in this court in support of the proposition mentioned, namely: *Ikerd* v. *Beavers*, 106 Ind. 483, and *Yount* v. *Yount*, 144 Ind. 133. But neither of these cases even tend to support appellees' contention on the point in question. In each of those cases the question of undue influence arose on a demurrer to a pleading alleging the actual exercise of undue influence. In the Ikerd-Beavers case, it arose on a demurrer to answers

Slayback *v.* Witt *et al.*

setting up the actual exercise of undue influence by the grantee on the grantor in the deed there in controversy. In the Yount case it arose on a demurrer to the complaint, setting forth and alleging circumstantially, as in the other case, the actual exertion of undue influence by the grantee on the grantor to induce the execution of the deed in question. The demurrer admitted the facts, and hence presented the same sort of a question of law as is presented when the undue influence is proved by evidence showing its actual exercise. Here it is not pretended that its actual exercise was proved, but it is contended that the law required the trial court to presume from the circumstances in evidence that such undue influence was in fact exercised.

We do not deem it necessary to go into an examination of the long list of cases cited to the effect that such a presumption legally arises out of such circumstances as are shown here. In a large class of cases such a presumption does arise from such circumstances as are shown to exist in this case, as we have already remarked. Nor do we deem it necessary to examine the cases cited tending to support the claim that such a presumption arises even in the case of a gift from a parent to a child, because, as before remarked, the great weight of modern authority is against such a presumption; and, moreover, it has been settled the other way in this jurisdiction ever since the May term of this court, 1861, a period now of about thirty-seven years. At that term the question of the validity of a gift by a father to his son was involved, in *Tenbrook* v. *Brown*, 17 Ind. 410, and this court, at p. 412, said: "But unfair dealing by the son is not to be presumed because the relation of father and son exists. The burden of proof of undue influence, or unfair dealing, is on the plaintiff." And

*Wray* v. *Wray*, 32 Ind. 126, decided in 1869, is to the same effect; so also is *Goodbar* v. *Lidikey*, 136 Ind. 1, 43 Am. St. 296, and authorities there cited.

But since the judgment in the circuit court was rendered this court has had the question here involved under consideration, and after having given it the most careful and elaborate consideration the identical question here involved was decided against appellees in *Teegarden* v. *Lewis, Admr.*, 145 Ind. 98. The third paragraph of the complaint in that case "alleged, that Deer was aged and infirm; that he lived with appellants, his daughter and son-in-law, and was easily controlled and influenced by them; and that they 'unduly importuned, persuaded, and influenced said decedent to turn over to them all his money which he then had in his possession, amounting,' etc., 'which said decedent gave into their possession under the influence of such undue persuasion and importunity, and they have retained the same. * * * The jury found, as relating to these several paragraphs, * * that in January 1888, the defendants, John R. Teegarden and Hulda Teegarden, his wife, received from said Deer, as a gift, * * * the sum of $3,850.00 which they yet hold and refuse to pay to the plaintiff as administrator. * * * We further find that from August, 1887, to the 22nd day of August, 1889, the time of Urial Deer's death, he was old, weak, and childish, and relied upon John R. Teegarden to go with him and assist him in transacting all his financial business; that during all of said period said Deer lived with said John R. Teegarden and the wife of said Teegarden, who was the daughter of the said Urial Deer, and that said Deer, during all of said period, was dependent upon said Teegarden and his (Teegarden's) wife for personal care and attention, and a home to live in, and that all of the money hereinbefore found to have

been procured from said Deer by them, or given to them by said Deer, has remained in their possession, as hereinbefore found, and that said defendants have not shown that they rightfully received said money from said Urial Deer, and we find that they wrongfully converted all of said money to their own use before the commencement of this suit.' * * * It was found, also, that when John R. Teegarden obtained said $3,400.00 from said bank, Deer was indebted in a sum stated, and 'said $3,400.00 was all the property of any kind that he owned or possessed,' at the time of its conversion, except the claims in this suit. * * The findings, that the appellants converted said sums to their own use, were conclusions, and had no proper place in the verdict. *Louisville, etc., R. R. Co.* v. *Balch,* 105 Ind. 93." The theory of each paragraph is manifest. By the third, the obtaining of his money by undue influence. Speaking of said sum of $3,850.00, it is said: "As to that sum, the finding is that it was a gift to the appellants, and there is no finding of positive fraud or undue influence. The parties treat the question, as to this sum, with reference to the doctrine of constructive fraud arising from the situation of confidence and dependence on the one side, and advantage on the other side, and we have no doubt it must be disposed of upon that doctrine upon any view of the finding.

"The jury seem to have accepted the theory that the burden rested upon the appellants to show that this money was rightfully received by them, and this theory presents the most important element of the present controversy. There can be no doubt of the general rule, that one occupying a fiduciary relation must, when the question is made, establish his right in equity and good conscience to any advantage gained

by him from or through his principal, or his principal's business. 8 Am. & Eng. Ency. of Law, p. 847; Pomeroy Eq. Jur., section 956; Bigelow Frauds, p. 278; Tiedman Eq. Jur., section 235; Beach Modern Eq. Jur., section 141. This duty most frequently arises where the relations between the parties are those of attorney and client; principal and agent; trustee and *cestui que trust;* guardian and ward, and the like. But, there can be no doubt, that the same rule applies, when from the superiority of one side and the weakness, partial incapacity or dependence of the other, a substantial and apparently unconscionable advantage has been gained. *Ewing* v. *Wilson*, 132 Ind. 223; *Ikerd* v. *Beavers*, 106 Ind. 483; *McCormick* v. *Malin*, 5 Blackf. 509, and authorities cited; *Woodbury* v. *Woodbury*, 141 Mass. 329, s c. 55 Am. Rep. 479; *Ashmead* v. *Reynolds*, 134 Ind. 139; *Jacox* v. *Jacox*, 40 Mich. 473; *Highberger* v. *Stiffler*, 21 Md. 338; *Crawford* v. *Hoeft*, 58 Mich. 1; *Barnard* v. *Gantz*, 140 N. Y. 249; *Martin* v. *Martin*, 57 Tenn. 644; *Street* v. *Goss*, 62 Mo. 226; *Hill* v. *Miller*, 50 Kan. 659; *Paddock* v. *Pulsifer*, 43 Kan. 718; *Mott* v. *Mott*, 49 N. J. Eq. 192; *Muzzy* v. *Tompkinson*, 2 Wash. 616; *Fitch* v. *Reiser*, 79 Ia. 34; *Moore* v. *Moore*, 81 Cal. 195; *Boisaubin* v. *Boisaubin*, 27 Atl. 624; *Green* v. *Roworth*, 113 N. Y. 462; *Allore* v. *Jewel*, 94 U. S. 506.

"By the findings, as to the sum now in question, Deer, while he was 'old, weak, and childish,' while he made his home with the appellants, and depended upon them for such home and for personal care and attention, upon Teegarden 'to go with him and assist him in transacting all of his financial business,' he made to said Teegarden * * his son-in-law and daughter, a gift of $3,850.00. * * * The naked question is: Will the relationship existing, together with Deer's infirmities, enforce the presumption of undue

influence, and cast the burden upon the appellants of showing the absence of such influence?

"Counsel for the appellants urge a distinction between the cases, where the ordinary fiduciary relation exists and those where the relation is that of parent and child. That such distinction has recognition in many of the authorities, is without doubt. However, many of the cases cited, last above, involve transactions between parent and child, and the distinction suggested was neither considered nor observed, but the ordinary rule was applied.

"In Pomeroy Eq. Jur., Vol. 2, section 962, in a chapter upon the subject of constructive fraud, and following a discussion of the rules with reference to advantages gained from the ordinary fiduciary relation, it is said: 'Where the parent is aged, infirm, or otherwise in a condition of dependence upon his own child, and the child occupies a corresponding relation of authority, conveyances conferring benefit upon the child may be set aside. Cases of this kind plainly turn upon the exercise of actual undue influence, and not upon any presumption of invalidity; a gift from a parent to a child is certainly not presumed to be invalid.'

"In Bigelow on the Law of Fraud, Vol. 1, p. 357, under the head of constructive fraud, and after discussing the question of conveyances and gifts by children to parents, where the parental influence may operate upon the hopes or fears of the child, it is said: 'The influence which a child may exert over a parent on the other hand, by acts of filial duty and obedience, can never be undue influence. That influence is proper which any person gains over another by acts of pure kindness and attention and by correct conduct. In the case of a gift from a child to a parent, undue influence may be inferred from the relation itself, but never where the gift is from the parent to the child.  *   *

A parent does not yield obedience to the child further than affection or duty prompts; and it is in accordance with the promptings of nature that parents should make gifts to their children.'

"In *Beanland* v. *Bradley*, 2 Smale & G., 339, it is said: 'There is no rule of this court which prohibits a man, by voluntary deed, from bestowing a benefit upon his son, or his grandson, or his son-in-law, even though only a few days before his death. To provide for his children or grandchildren is, or may be, a necessary duty; and where a father discharges that duty, this court will not presume fraud. If fraud is alleged, it must be proven in the ordinary way.'

"In *Wessell* v. *Rathjohn*, 89 N. C. 377, s. c. 45 Am. Rep. 696, a father was in a condition, arising from debility, to make him easily subject to importunity and undue influence, and his child occupied a position affording an opportunity to exercise such influence. In this condition, the father made a deed of conveyance to the child. It was held that undue influence would not be presumed, and in the course of the opinion it was said: 'The facts stated are not inconsistent with the entire integrity of the deed, that is, the facts may be true, as stated, and the deed may have been executed in good faith and without the slightest improper act or conduct on the part of the grantee. The facts stated are evidence, not amounting to a presumption, to go to the jury upon a question of *mala fides* when raised. It is not strange or unnatural that a father, feeble in health, of weak mind, and easily influenced by a daughter having opportunity to exercise such influence, should give his daughter a house and lot and execute to her a deed for it. It is natural, that the father should provide for his daughter; this is a proper and orderly thing to be done. It is what the paternal feeling of good men prompts them to do; it is what

Slayback *v.* Witt *et al.*

just men commend and the law tolerates. Why should the law cast suspicion upon such a transaction? When the transaction, the deed, is right in itself, such as the law tolerates and the common sense of men approves as just, reasonable and commendable, and there is the absence of the relations of suspicion founded on motives of policy, no adverse presumption arises; on the contrary, the law presumes such deed or transaction in all respects proper and just until the contrary is made to appear. The burden is on him who alleges the contrary to prove it. * * * The relation of parent and child, as the presumption of fraud and *onus* of proof to rebut the same, in business transactions between them, does not stand upon the same footing, as the relation of trustee and *cestui que trust,* guardian and ward, attorney and client, principal and agent, and the like relations; it belongs to a different class of fiduciary relations, in which the presumption is not so strong, nor does it arise under the same circumstances. Besides, the presumption is always against the party having the superior dominant position or control, and this, in the case of parent and child, is that of the parent.' See also *Jackson* v. *King,* 4 Cowen 207, s. c. 15 Am. Dec. 354; *Saufley* v. *Jackson,* 16 Tex. 579; *Howe* v. *Howe,* 99 Mass. 88; *Wray* v. *Wray,* 32 Ind. 126.

"In *Saufley* v. *Jackson, supra,* in speaking of the rule where the ordinary fiduciary relation has been abused, it was said: 'But it is clear that this rule was never applied, neither unqualified or qualified, to a deed or gift from a parent to a child; and the reverse of such principle has always been sustained; and there is not believed to be a single exception to the principle that a deed from a parent to a child is always regarded with a favorable eye, and every presumption is in favor of its validity.'

"In our opinion, the distinction contended for must rule the present inquiry. As to Mrs. Teegarden, that she was a daughter who discharged a moral obligation of supplying a home to and caring for the personal needs of her father, who was aged, weak, and childish, is all that can be urged to raise the presumption of undue influence on her part. In addition to a like discharge of obligation, John R. Teegarden went with and assisted Mr. Deer in transacting his financial business.

"If the assistance of John R. Teegarden in the business affairs of Mr. Deer raised the fiduciary relation covered by the general rule, it is difficult to see how that fact could taint the gift as to Mrs. Teegarden. But, we apprehend, that more must appear as to both of the appellants. *  *  * If there is any strength in the exception to the general rule, it is indispensable that some element of positive fraud shall be found. The conduct of the appellants, with reference to the gift, so far as the facts appear, is not only not objectionable, but it is highly commendable, save only, possibly, in receiving the gift from one mentally weak. Mental weakness alone is not claimed to be sufficient to avoid the gift. Neither the weakness of Deer nor the control of his affairs, as found, can authorize the conclusion that he was under the superior control or equitable guardianship of the appellants."

This decision and the principles therein announced are directly applicable to and decisive of the present case, requiring the reversal of the judgment, because there was no evidence of the exercise of any actual undue influence, and in the class of cases to which this one belongs no presumption arises from the facts and circumstances in evidence that any such undue influence and fraud were exerted or practiced inducing the execution of the deed. The authorities elsewhere hold-

ing the same doctrine are almost innumerable. The following are some of them: *Oliphant* v. *Liversidge*, 142 Ill, 160-170, 30 N. E. 334, and authorities there cited on last page; *Hatcher* v. *Hatcher*, 139 Mo. 614, 39 S. W. 479; *Guild* v. *Hull*, 127 Ill. 523, 20 N. E. 665; *Rutherford* v. *Morris*, 77 Ill. 412; *Brownfield* v. *Brownfield*, 43 Ill. 148; *Eastis* v. *Montgomery*, 95 Ala. 486, 36 Am. St. 227, 11 South. 204, and authorities cited; *Maddox* v. *Maddox*, 114 Mo. 35, 35 Am. St. 734, 21 S. W. 499; *Cudney* v. *Cudney*, 68 N. Y. 152; *Woodward* v. *James*, 3 Strob. 552, 51 Am. Dec. 649; *Whelpley* v. *Loder*, 1 Demarest, 368; *In re Hess's Will*, 48 Minn. 504, 51 N. W. 614; *In re Brunor's Will*, 43 N. Y. Supp. 1141. The circuit court erred in overruling appellant's motion for a new trial. The judgment is reversed and the cause remanded, with instructions to sustain the defendant's motion for a new trial, and for further proceedings not inconsistent with this opinion.