IN RE JANE MASON'S WILL.

October Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed March 23, 1909.

*Wills — Testamentary Capacity — Evidence — Admissibility— Conceded Facts — Trial — Order of Proof — Discretion — Witness—Competency—Transactions with Decedent.*

In a proceeding to establish a will, evidence as to the mental condition of testatrix and her feelings towards her children four years before executing the will was not too remote to be received and considered with like evidence relating to other times during that period.

The reception of evidence of a fact that is conceded is ordinarily discretionary with the trial court; but the nature of the offered evidence and its relation to the conceded fact and the main issue may be such that the ruling thereon will be revisable.

In a will contest, contestant's concession that testatrix was sane at a certain interview with her did not render witness's account of that interview inadmissible. *Croker* v. *Chase*, 57 Vt. 413, distinguished.

The order in which admissible evidence shall be received is in the discretion of the trial court.

In a will contest involving the issues of testamentary capacity, undue influence, and deceit, and in which one of the testatrix's children was the contestant, proponent was properly allowed to show that in a certain interview testatrix spoke of contestant having stolen her bonds, and asked other of her children whether they did not know it was so, and that they answered that they did know it and that there was no doubt about it; testatrix's belief as to contestant's having stolen the bonds affording a partial explanation of the inequality of benefits relied on by contestant to show the unreasonableness of the will.

Where a will provided that proponent, one of testatrix's children, should have her farm and personal property thereon at a specified price, in accordance with a contract previously made, and the will was contested by another child on the grounds of lack of testamentary capacity, undue influence, and fraud, proponent was not incompetent, because of the death of other party to said contract, to testify that in accepting the contract, she waived a claim against the testatrix of about $2000, since the said contract was not the issue.

The relation of parent and child raises no presumption of undue influence in respect of a contested will under which the child is a beneficiary; but the burden is on the contestant, independent of any presumption, to show that the child exercised any undue influence.

APPEAL from a decree of the probate court establishing an instrument as the last will and testament of Jane Mason. Martha Mason, one of the testatrix's children, proponent, and John Mason, another child, contestant. Trial by jury at the December Term, 1907, Caledonia County, *Waterman*, J., pre-
11

siding. Verdict and judgment for the proponent. The contestant excepted. The opinion states the case.

*Dunnett & Slack* for the contestant.

It was error to admit the testimony as to the interview with the testatrix. It was conceded that at the time of that interview she was sane. *Crocker* v. *Chase,* 57 Vt. 413; *Chickering* v. *Brooks,* 61 Vt. 554.

The evidence of the proponent as to the terms of the contract referred to in the will should have been excluded. The contract was in issue and the other party thereto was dead. *Hollister* v. *Young,* 42 Vt. 403; *Davis, Admr.* v. *Windsor Savings Bank,* 48 Vt. 532; *Fitzsimmons* v. *Southwick,* 38 Vt. 509; *McElroy* v. *McLeay,* 71 Vt. 396.

Under the charge the burden of establishing undue influence was left upon the contestant. The fact should have been presumed in the circumstances, and the burden of overcoming it cast upon the proponent. *In re Barney's Will,* 70 Vt. 369. *In re Roger's Will,* 80 Vt. 559.

*Howe & Hovey* for the proponent.

The conversations and interviews with the testatrix were admissible as the basis of the witness's opinion of the mental capacity of testatrix, and as showing her feelings towards her children. *Morse* v. *Crawford,* 17 Vt. 499; *Cram* v. *Cram,* 33 Vt. 15; *Hathaway* v. *Nat. Life Ins. Co.,* 48 Vt. 335; *State* v. *Hayden,* 51 Vt. 296; *Chickering* v. *Brooks,* 61 Vt. 554; *Foster's Ex'rs.* v. *Dickerson,* 64 Vt. 233 at 244, 249; *Denison's Appeal,* 29 Conn. 399; *Shanley's Appeal,* 62 Conn. 325.

There is no fact or circumstance that appears in the case from which a presumption of undue influence can arise or which would have justified the court in charging that as to the contract the burden was on the proponent to prove the absence of undue influence. None of the facts are present which are necessary to raise such a presumption of undue influence in accordance with the rules laid down in recent will cases in Vermont. *In re Barney's Will,* 70 Vt. 352; *In re Wheelock's Will,* 76 Vt. 235; *In re Cowdry's Will,* 77 Vt. 359; *In re White's Will,* 78 Vt. 479; *In re Roger's Will,* 80 Vt. 259.

MUNSON, J.    Evidence regarding the mental condition of the testatrix and her feelings towards her children four years before the execution of the will, was not too remote to be received in connection with like evidence relating to other times during the four years.

The contestant's concession that the testatrix was sane at the time of the second interview testified to by Mr. Howe, did not render his account of that interview inadmissible.    It is ordinarily within the discretion of the court to reject or receive evidence of a fact that is conceded.    *Dunning* v. *Maine Cen. R. Co.,* 91 Me. 87, 39 Atl. 352, 64 Am. St. Rep. 208; *Com.* v. *Costello,* 120 Mass. 358; *Whitside* v. *Lowney,* 171 Mass. 431, 50 N. E. 931.    But the nature of the evidence offered and its relation to the conceded fact and to the main issue may be such that any action of the court thereon will be revisable.    The value of evidence like that in question depends in part upon the combined effect of a series of occurrences and expressions extending over a considerable   period and continuing to the time when the will was made, and a concession of sanity at any particular time may not   give the proponent all the benefit that would have been derived from a narrative of what was then said and done.    This concession covered only the fact of sanity at the particular time designated, evidence of which was admissible solely for its bearing on the mental condition existing when the will was executed.    The proponent was entitled to show the full mental capacity of the testatrix at the time of the testamentary act, however much it might exceed the requirement of a disposing mind; and the concession made was not co-extensive with the evidence introduced, for that tended to establish both testamentary capacity and a mental vigor not likely to be overcome by undue influence.    If any of. the evidence bore solely upon the question of undue influence, its reception in the opening was a matter of discretion.

The contestant's position is not supported by *Crocker* v. *Chase,* 57 Vt. 413.    There the contestants introduced evidence of statements made by the testatrix three years after the execution of her will, to the effect that she was so weak at the time of its execution that she did not know what she was doing.    In offering this evidence the contestants stated, and offered to show, that the testatrix was mentally competent when the statements were made, and the proponent said nothing to the contrary.    So

these statements were not offered as showing the mental condition of the testatrix at the time they were made, for the bearing that would have upon her mental condition at the date of the will, but were offered solely as direct evidence of the weakness of her mind when she executed the will. The distinction between the two cases is obvious. The evidence in the *Crocker* case was merely the testatrix' declaration of a past condition, offered by the contestants in impeachment of a will formally executed and left uncancelled. The evidence here was a presentation of an actual manifestation of the testatrix' mind, offered by the proponent as part of a continuous history of mental capacity covering the time when the will was made. The statement in the *Crocker* case was not held inadmissible merely because the testatrix was treated as sane at the time it was made, but because that fact broke the only evidentiary connection between the statement and the testamentary act.

It appeared that in this interview the testatrix spoke of John's having stolen her bonds and asked Albert and Martha if they did not know it was so, and that they replied that they did know it and that there was no doubt about it. The reply was specially objected to. The proponent contends that it was admissible as bearing upon the testatrix' relations to her children. The contestant argues that there is nothing upon the face of the will to indicate that the children were treated unequally, and that evidence touching the relations between the testatrix and her children was not admissible until made so by the contestant's evidence regarding the sum at which the proponent was permitted to take the farm. The case was being tried upon pleas of incapacity, undue influence, and deceit as to the value of the farm. The entire account of this interview was offered and received as bearing upon the testatrix' mental condition, as the basis of an opinion of the witness in that behalf, as bearing upon the question of undue influence, and as showing the testatrix' feelings towards her children. It was within the discretion of the court to receive in the order of its occurrence all of the conversation that was admissible on any of these grounds, even if some portion of it anticipated the case of the contestant. It cannot be said that the evidence specially objected to had no bearing upon the issues. When the testatrix expressed her belief regarding the contestant's conduct, and appealed to the children present for a confirmation of her belief,

their statement in confirmation of it was itself admissible. Her confirmed belief regarding the bonds afforded a partial explanation of the inequality of benefits which the contestant relied upon as showing the unreasonableness of the will.

The will provided that the proponent should have the testatrix' farm and the personal property thereof for six thousand dollars, in accordance with a contract previously made. The proponent was permitted to testify that in accepting this contract she waived a claim against the testatrix for about two thousand dollars. It was objected that the proponent was not a competent witness to the contract because of the death of the other contracting party. The same question was raised in *Manley* v. *Staples,* 65 Vt. 370, 26 Atl. 630, with reference to a witness similarly placed, and it was there held that the matter in issue and on trial was the validity of the will, and that the contract was only incidentally and collaterally involved. But the grounds of contest are not identical, and further consideration of the question is necessary. The plea in this case alleges that the contract of sale was induced by fraudulent representations regarding the value of the property, and that the corresponding testamentary provision was induced by fraudulently representing that the contract price was the fair value of the property and that its acquirement by the proponent at that price would result in an equal distribution of the estate among the children. It is argued that the contract and will are so related that if the execution of the contract was procured by the fraud and undue influence of the proponent, and the fraud was not discovered by the testatrix before the will was made, the effect upon the will would be the same as if the fraud and undue influence had entered directly into its execution. It will be noticed that this argument, although designed to give essentiality to the contract, really points to the will as the matter in issue, and to the conditions existing at the time it was made as determinative of the issue. This could hardly be avoided, if the nature and purpose of the proceeding were to be recognized. The proponent is not seeking to enforce the contract, but to sustain the will. If she takes the property it will not be by virtue of the contract or of any instrument executed in pursuance of it, but as a benefit conferred by the will. It cannot be said that the contract was the real matter in dispute, as in the cases relied upon by the contestant. It was not essen-

tial to the maintenance of the proponent's claim that the validity of the contract should be established. The inquiry was regarding conditions existing when the will was executed, and prior matters were important only as they bore upon those conditions. If the testatrix was mentally competent, free from undue influence, and not acting under any deception, when the will was made, the existence of incapacity, undue influence and fraud, in connection with the making of the contract, was immaterial. The question whether these conditions existed at the time of the contract was but a part of the general inquiry bearing upon the validity of the will. The matter of the contract was not the issue, but evidence upon the issue.

The points made regarding the charge are all based upon the failure of the court to instruct the jury that in the circumstances disclosed by the evidence the burden upon the issue of undue influence was on the proponent. The rule for which the contestant contended has since been held inapplicable in cases where the beneficiary is the donor's child. *Pember* v. *Burton,* 82 Vt. 12, 71 Atl. 812.

*Decree affirmed and ordered certified to the probate court.*