IN RE WILL OF MARY H. HAYS COLLINS.

May Term, 1946.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 1, 1946.

524

*Asa S. Bloomer* and *Ryan, Smith & Carbine* for the contestants.

*Lawrence & O'Brien* and *Joseph A. McNamara* for the proponent.

STURTEVANT, J. This case is concerned with the probate of the last will and testament of Mary H. Hays Collins, late of Middletown Springs in the District of Rutland, who died at the Rutland Hospital on May 7, 1945, aged nearly 75 years. The will in question was executed in the office of Lawrence & O'Brien, Attorneys-at-Law, in the City of Rutland, June 21, 1944. The instrument was presented for proof to the probate court by the Central Hanover Bank & Trust Co., the executor named therein, and was duly allowed by that court. From that judgment a general appeal was taken to Rutland County court by Edith Smith Froment, Brenton Greene Smith and Louise Hoyt Smith, cousins of the testatrix. The grounds of this appeal were: 1, the instrument was not properly executed, 2, the testatrix was not of sufficient mental capacity to make the instrument and, 3, the instrument was the result of undue influence exerted on the mind of the testatrix. Josephine S. Fitch, another cousin of the testatrix, intervened as a party contestant before trial in county court. At the time the instrument was executed, the testatrix had as her nearest relatives six cousins, including the four above named and Lewis Ginter Young and Edna Young Benchley, the two last named being children of Albert Young, an uncle of the testatrix, neither of whom appeared as

a contestant. The above named contestants are children of Emma Young Smith, an aunt of the testatrix. During the trial, Mary T. Rennard, to whom the instrument here in question gives a legacy of $1,000.00, and who is not an heir-at-law of the testatrix, was allowed to intervene as a contestant on the ground that she was entitled to share in the estate under the terms of the will of the testatrix executed in 1934. Mrs. Rennard died soon after the trial in county court.

At the close of all the evidence, the proponent moved that the court direct a verdict establishing the instrument in question as the last will and testament of Mary H. Hays Collins. This motion was granted and a verdict was returned accordingly and a judgment thereon was duly entered. The case is here on contestants' exceptions to the granting of proponent's motion for a directed verdict and to the ruling of the court in excluding certain evidence offered by the contestants. While the appeal to county court was on the three grounds hereinbefore stated, the contestants do not here claim that the instrument in question was not duly executed nor that the testatrix was not of sufficient mental capacity to make the same. They do contend, however, that the instrument is the result of undue influence exerted by Williston J. Farrington, one of the four residuary legatees named in the will, and that the offered instrument is his will and not that of the testatrix. They also claim error in the exclusion of certain evidence which will be specifically referred to later.

We will first consider the questions raised as to the action of the court in directing a verdict for the proponent and in doing this the evidence must be taken in the light most favorable to the contestants. So considered, the evidence shows the following material facts.

The last will of Mary H. Hays Collins was executed by her June 21, 1944, at the law office of Lawrence & O'Brien in Rutland. It is limited to property in the United States and makes the following bequests. All clothing and wearing apparel to Margaret Murray, who entered the employ of Mrs. Hays, mother of testatrix, in 1906, so remained until death of Mrs. Hays in 1927, then employed by testatrix until the latter's death. She is married and has four children.

To Mollie Burke, a former employee of Mrs. Hays, all mort-

gages held on her property, the value of these being about $9,000.

To her cousins, Brenton Greene Smith, $5,000; Edith Smith Froment, $1,000; Josephine Smith Fitch and Louise Hoyt Smith, $100 each. Her cousins Lewis Ginter Young and Edna Young Benchley are mentioned as being otherwise provided for.

To Mary Townsend Rennard and B. Franklin Manierre, $1,000 each. They were friends of the testatrix.

To Collins Bethel, $5,000. He was an employee of testatrix while she resided at Middletown Springs.

To the Baptist Home Society of New York City, Williston J. Farrington, Mrs. Margaret Murray and Harriet Graham Sloan, each one fourth of the residue. Mrs. Sloan's portion is bequeathed to her children, in case she predeceases the testatrix. The Baptist Home Society, now called the Baptist Home for Aged is a charitable organization under the direction of the Baptist Church. The testatrix had been interested in it for many years as had been other members of her family. They had been Baptists and the bequest is made "in memory of Charles L. Young and Matilda Young Hays," grandfather and mother of testatrix. Mrs. Sloan was a long time friend of both the testatrix and her mother. The status of Mrs. Murray has been above stated and Farrington was an officer in the Central Hanover Bank & Trust Company named as executor.

The testatrix was born in New York City May 25, 1870, and through her mother was the grand-daughter of Charles L. Young. Her husband died many years ago and at the time the instrument here in question was executed her heirs-at-law were the six cousins hereinbefore mentioned. Sara Young Baldwin, a sister of her mother, died in 1928 leaving a legacy of about $110,000 to the testatrix and a like sum to each of her cousins. The testatrix left an estate of about $1,800,000.00 and the greater part of this was a portion of the estate of her grandfather going first to her mother and at her death passing to the testatrix.

In 1908 and for some time thereafter the testatrix and her mother kept a winter home in New York City and a summer home at Great Neck, Long Island. They made several trips to Europe and during the winter seasons they entertained and were entertained by their friends and availed themselves of the opportunity afforded by the city to enjoy literature, art, music, the theatre and various other activities. In 1926 they gave up their residences in the United

States and established themselves in Florence, Italy, where Mrs. Hays died in 1927. Mrs. Collins brought her mother's remains here for burial in the family lot in the Greenwood Cemetery in Brooklyn and after a visit here of about one month she returned to Italy where she continued to reside until 1941 when she returned to live in the United States because of war conditions in Europe. While residing in Italy the testatrix made occasional short visits to the United States. Soon after her return she purchased a home in Middletown Springs, in this state, which she kept during the remainder of her life.

The testatrix was an active person, always in good health, was gay and had a keen mind and was interested in current events including politics and world events. She was shrewd and capable and managed her ordinary affairs with ordinary skill and intelligence. She was a member of the Baptist Church and contributed to its support and to the support of its various subsidiary agencies. While in Italy she was interested in the American Church in Florence and while living in Middletown Springs, she attended and contributed to the community Church there.

In November, 1927, the testatrix placed a considerable portion of her property with the Union Trust Company of New York City which later became Central Hanover Bank & Trust Company, under a custodian or agency agreement. In 1934 she transferred other stocks and bonds from the United States Trust Company to the Central Hanover Bank & Trust Company and from that time most of her securities were with the latter under a custodian or agency agreement. Under that agreement the bank had general supervision of her securities and gave her advice as to the sale and purchase of securities but the final decision as to all such sales or purchases was left with her. Williston J. Farrington, one of the four residuary legatees named in the will in question here, was an officer in the personal trust department of the bank and as such he had supervision of the account of the testatrix as well as the accounts of many other persons. By periodic statements and frequent letters, Mrs. Collins was at all times kept informed as to the condition of her account. In 1939 Farrington was transferred from the Plaza branch to the main office of the bank and he notified Mrs. Collins of the pending change. At her request her account was transferred to the main office of the bank so that it might continue to receive

his personal attention. There was a substantial gain in the value of her account while it was with that bank. There were about four hundred accounts being cared for in the branch bank and none of these, except that of Mrs. Collins, was transferred at that time. In 1941 war conditions made it unsafe for Mrs. Collins to remain longer in Italy and she wished to return to the United States. She was having difficulty in getting out of Italy and wrote to Farrington about this matter. He became very active in this matter and after a delay of some months finally arranged so that she obtained passage by boat to New York. He engaged rooms at a New York hotel for her to occupy on her arrival and assisted her in the purchase of a car in the fall of 1941 which was stored for her in the city until the spring of 1942. She took possession of the car when she returned from a southern trip at that time. Farrington made a trip to Rutland to see about getting tires for the car as there was some question under the rationing regulations regarding this matter and when she left New York that spring he drove the car to Old Lyme, Conn., for her where she visited the Washburn family who were friends of hers and later Mr. Washburn drove the car for her to Middletown Springs. The expense of the Rutland trip, not including a service charge, was charged to her account at the bank. No expense was charged for the Old Lyme, Conn., trip. Mrs. Collins had great confidence in Farrington and she said that she would not know what to do without his advice at times, that he helped her very much and that he was a person on whom she more or less depended. While she had many other friends she did not discuss her financial affairs with any of them. The correspondence between Farrington and the testatrix was voluminous and beginning at about the time his mother died in 1942, some of the letters addressed to her were written at his home in Mt. Vernon. The bank records indicate that he first met her in 1927 but as he remembers it, he first met her at the bank in 1930. At her invitation he visited her in Italy in 1936 for two days, also at her home in Middletown Springs for two or three days in June of each year, 1942, 1943 and 1944. Also beginning in October, 1944, he called to see her at the Berwick Hotel in Rutland, where she was ill, once each month, and continued to see her each month until her death at the Rutland Hospital, May 7, 1945. On the occasion when he saw her in December, 1944, she dictated to him and he wrote out her instructions for her burial and

she signed that paper. According to these instructions there was to be no funeral ceremony and no unnecessary publicity given to her death. Farrington was to see that her remains were buried in the family lot in Greenwood cemetery in Brooklyn. These instructions were carried out. Notice of her death was not sent to any of her cousins. In 1941, she had an account with a London Bank, placed there by her on Farrington's advice, for her convenience while living in Italy. Soon after her return to the United States, Farrington advised her to transfer that account to New York. She did not do this at once but finally signed an order dated August 25, 1943, directing the transfer of that account to Farrington "for services rendered." Delivery of the order was made April 21, 1945, and the account was transferred and credited to her account at the Central Hanover Bank & Trust Company. Farrington claimed to act as her nominee in that matter and did not claim any personal interest in the account which was in excess of $150,000. Farrington did not then know the provisions of the will here in question. Because of war conditions, England was then imposing certain restrictions on such transfers. In many of the letters written by the testatrix to Farrington, she minimized the amount of her account, sometimes referring to same as "my small affairs," and other similar expressions. In 1938 Farrington sold her property at Great Neck, L. I., for $10,000 more than she expected to get. In appreciation of this, she sent him a check for $5,000. He refused to accept this check and returned it to her. In a letter written to him from Italy, dated December 3, 1932, she stated: "I am practically without relatives. What I leave, if I leave anything, will be divided among friends and I am too selfish to give it to them now. Perhaps if I go again to America, you can show me some way." While residing in Middletown Springs, Mrs. Collins spent a considerable time in visiting friends in Stowe, Vt., New York City, Old Lyme, Conn., Washington, D. C., and Asheville, N. C. She was friendly with the White family, residents of Middletown Springs, and was on a visit at their home when she purchased her place in that town.

The testatrix kept in closer touch with Mrs. Froment than with her other cousins. On one occasion when Mrs. Froment and her daughter were travelling in Europe, they visited Mrs. Collins for several days at her invitation and they kept up a correspondence for many years before her death. It was their custom to see each other

when Mrs. Collins was in New York. Mrs. Froment never visited Mrs. Collins in Vermont and last saw her in December of 1943 or January of 1944. The testatrix last saw her cousin Brenton Greene Smith when, at her request, he met her at the boat in 1927, at the time she brought her mother's remains here for burial. While there was an occasional exchange of letters between them, this was not frequent. They exchanged greeting cards at Christmas time. It does not appear that the testatrix had kept social contact with her cousins Mrs. Fitch and Miss Smith. Mrs. Fitch lives in Quogue, Long Island, is a cripple and uses two canes to get about her house. She runs an antique shop at her residence. Some years ago Mrs. Froment and her husband each gave some money to Mrs. Fitch to prevent the loss of her home on foreclosure proceedings. Miss Smith resides at Greenwich, Conn.

The testatrix made several wills during the ten years preceding her death. A will dated June 21, 1934, contained the following bequests. $200 each to nephews and nieces of her mother who should survive her; one half of the residue in the United States in trust, the income to go to her friend Mrs. Mary T. Rennard for life, then the principal to go to the Baptist Home Society. The other half of the residue in the United States was to be divided equally among the five persons named. Included among these was only one relative, namely, her cousin Brenton Greene Smith. The Central Hanover Bank & Trust Co., where the instrument was executed was named executor. She made a will in 1939. The evidence discloses little as to its contents except that Farrington was named as a legatee therein which fact was known to him. The amount of that bequest does not appear. Early in 1942, the testatrix sent Farrington her draft of another will asking him to have it put in proper form and returned to her for execution. That draft gave him one fourth of the residue of her estate. Farrington had that draft put in proper form, omitting therefrom his name as legatee, and returned the will, so changed, to her for execution. She received it in January or February, 1942, while visiting friends in Asheville, N. C. She then wrote Farrington a letter in which she stated as follows:

"I have never expressed to you half the gratitude I should for all you did to get me home. But for you I

should never have gotten out of Italy there is no doubt about that, and I am very thankful to be here."

In that letter she also states.

"I appreciate how you feel about that Will but please try and appreciate a little how I feel also. It is impossible for me not to be grateful and appreciative of your unfailing kindness and the care you take of my small affairs. I only wish it were more. . . . Anyway it is too small a sum to bother about."

She then consulted Mr. Silas Bernard, a lawyer in Asheville, and a brother of her friend Mrs. Jones. She asked and obtained advice as to whether she had to leave her property to blood relatives and whether she could write in the name of Farrington as a legatee in the instrument she had with her at the same time stating her reasons for wishing to do so. Having received advice on these matters she wrote Farrington's name in the instrument, thus making him a residuary legatee, made a notation on the instrument to that effect and then signed and executed the instrument under the direction of Attorney Bernard. In connection with the execution of that instrument Mrs. Collins made a memorandum on the first page of which she set out a list of her relatives and on the second page she wrote as follows.

"I feel no obligation to leave my mother's share of her father's estate or anything that may have been added to it to these cousins."

"To Brenton Greene Smith and Edith Froment I leave small remembrances in appreciation of kindnesses on their part. Their mother naturally received her share and in addition they received from my aunt Mrs. Baldwin (after her legacy of five thousand each to Lewis Ginter Young and Edith Young Benchley) 6/7 of her estate. That branch of the family have therefore received nearly half of the estate left by our grandfather. The remaining 1/7 Mrs. Baldwin most kindly left to me. I wish to do whatever is legally necessary to avoid trouble to my Executors."

With the exception of the writing in of the name of Farrington as a residuary legatee by the testatrix, the will was executed as drafted and it contained the following bequests. To Brenton Greene Smith and to Mrs. Rennard, $5,000 each; to B. Franklin Manierre and Edith Hoyt Froment, $1000 each; to Josephine S. Fitch and Louise Hoyt Smith, $100 each; to Mollie Burke, mortgages held by testatrix against her. The residue of her estate in the United States in equal parts to, 1, Margaret Murray; 2, Harriet Graham Sloan and her children; 3, to a trustee, the income to be paid to Marion H. Clark and her sister, and upon the death of the survivor, the principal to be paid to the Baptist Home for the Aged; 4, Williston J. Farrington. The Central Hanover Bank & Trust Company was named executor and trustee.

When the testatrix came north in March, 1942, she saw Farrington in New York and told him that she had written in his name as a legatee in that will. He told her that he could not accept the legacy and he also told her that he could not take any gift, gratuity or extra compensation from one of the patrons of that bank in his department. He understood such to be the policy of the bank because of instructions he had previously received from other bank officers.

On May 1, 1943, the testatrix executed a will at the office of Lawrence & O'Brien in Rutland, prepared by them under her instructions. This was the same as the one now being considered, except that it did not contain a bequest to Collins Bethel, an employee of testatrix. Farrington knew nothing about the execution of the 1943 will, had no knowledge of its contents and never saw it until after the death of the testatrix. The same is true as to the will here in question.

Speaking of what is necessary to establish undue influence this Court has said:

"In order to avoid a will on the ground of undue influence, the influence must be such as to destroy the free agency of the testator at the time and in the very act of making the instrument." *In Re Everett's Will*, 105 Vt 291, 301, 166 A 827, 830.

"Undue influence in this connection means whatever destroys free agency and constrains the person

whose act is under review to do that which is contrary to his own untrammeled desire. . . . Opportunity must necessarily be shown but opportunity alone does not justify the inference of undue influence. Furthermore, undue influence by whatever means exerted, and however, urgent and persistent, will not suffice to avoid a will unless carried to the point of destroying the free agency of the testator." *In re Everett's Will,* 105 Vt at 315, 166 A at 836; *Smith's Exr.* v. *Smith,* 67 Vt 443, 445, 32 A 255; *Foster's Exrs.* v. *Dickerson,* 64 Vt 233, 243, 24 A 253.

█ It is not necessary that undue influence be shown by direct evidence as it may be shown by circumstances which have a legitimate tendency to prove that it was used. *In Re Everett's Will,* 105 Vt at 315, 166 A 827, and cases cited.

██ The burden of proving the existence of undue influence is, ordinarily, upon the contestant. But when the circumstances connected with the execution of the will are such as the law regards with suspicion, the burden is shifted to the proponent, who must show affirmatively that the will was not procured by this means. Indeed, it has been held that in such a situation the law raises a presumption of undue influence, which establishes prima facie the existence of it, and is sufficient to defeat the will unless and until it is overcome by counter proof. Generally speaking, the doctrine is applicable where a relationship of trust and confidence obtains between the testator and the beneficiary, or where the latter has gained an influence or ascendency over the former. Usually, but not always, it appears that the beneficiary has procured the will to be made or has advised as to its provisions. There are certain modifications to the doctrine which affect the relationships of husband and wife, or parent and child, which it is not necessary to consider. No rule of general application can be formulated to cover all varying circumstances. *In Re Moxley's Will,* 103 Vt 100, 112, 152 A 713, and cases cited.

The fact that Farrington, as an employee of the bank, acted as investment counsel for Mrs. Collins is not enough of itself to raise a presumption of undue influence. She was the owner of a large amount of stocks and bonds. It would have been most difficult, if

not impossible, for her to keep herself informed so as to judge wisely as to sales and purchases and when such transactions should be made for the protection of her account. To obtain the services of experts in these matters was the exercise of good business judgment. While Mrs. Collins at times consulted Farrington on other matters and had great confidence in him, all these facts under the circumstances disclosed by the evidence are not sufficient to generate suspicion as to the making of the will. There is no evidence that Farrington exerted any influence or ascendency over the testatrix as to that matter. What happened as to the preparing of the 1942 will and its execution at Asheville, N. C., and the fact that Farrington had told the testatrix that he could not take as a legatee under her will, all tend to show the contrary. Farrington was not present when the will was drawn and executed, had no knowledge of the matter and did not know the contents of the instrument until after the death of the testatrix. She was in good health when the instrument was executed and was managing her ordinary affairs with ordinary skill. The matter of undue influence aside, that she was of sufficient mental capacity to make her will is not in question here.

Neither can it be said, as a matter of law, that the provisions of the will were so unnatural and unreasonable as to aid in raising the presumption. Mrs. Collins had, of course, the right to dispose of her property as she saw fit. Why she felt no obligation to leave her property to her cousins is plainly stated in the memorandum made by her at the time she executed the 1942 will at Asheville, N. C. It is only when the will is grossly unreasonable in its provisions, and plainly inconsistent with the testator's duty to his family, that, in case of doubt, the inequality can have any effect on the question of undue influence. *In Re Moxley's Will*, 103 Vt 100, 113, 152 A 713. We hold that the granting of proponent's motion on this ground was without error.

During the cross-examination of Farrington, a witness for the proponent, the contestants produced certain pamphlets published by government authority, containing rules and regulations for the operation of National banks and of State banks that have become members of the Federal Reserve System. Subsection b of section 14 of Regulation F was shown to Farrington and he was asked if he recognized it as one of the regulations under which he was to

run the trust department of the bank with which he was connected and replied in the affirmative. That regulation is as follows:

> "*(b) Officer or employee of bank as co-fiduciary.*
>
> "No national bank shall, except with the specific approval of its board of directors, permit any of its officers or employees, while serving as such, to retain any fee or other compensation for acting as a co-fiduciary with the bank in the administration of any trust accepted or undertaken by it."

The above regulation was offered in connection with the testimony of the witness and was excluded subject to contestants' exception. Other regulations claimed to make the above rule applicable to the Central Hanover Bank & Trust Company were also offered and excluded subject to exceptions by contestants. When this took place Farrington had already testified on direct examination that when Mrs. Collins saw him in New York in March, 1942, and told him that she had inserted his name in her will as a legatee, he then told her that he could not accept the bequest. Later in cross-examination, referring to that same conversation, Farrington was asked the following questions to which he made the following answers. Q. And did you communicate that to Mrs. Collins, that understanding of yours? A. I did. Q. And was that to the effect that you as an employee of the bank in its trust department couldn't accept any benefit or gratuity or compensation from its patrons outside of the bank's percentage? A. Substantially.

As hereinbefore stated, that understanding on his part came from instructions he had received from other officers of the bank. It follows that if there was error in excluding the offered Federal regulation, a question which we do not determine, such error, if any, was made harmless by testimony which was later introduced concerning the bank's policy as to extra compensation to officers or employees from patrons of the bank.

*No error is made to appear. The judgment establishing the instrument dated June 21, 1944, as the last will and testament of Mary H. Hays Collins, late of Middletown Springs in the District of Rutland, is affirmed with costs to the proponent. To be certified to the probate court.*