## In re Estate of Lena A. Raedel

[568 A.2d 331]

No. 86-068

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed May 5, 1989

Motion for Reargument Denied September 11, 1989

*Stephen L. Saltonstall* of *Witten, Saltonstall & Woolmington, P.C.*, Bennington, for Appellant.

*James J. Cormier, Jr.*, Bennington, for Appellees.

**Morse, J.** This is an appeal from a judgment overturning the will of Lena Raedel, late of Stamford, Vermont. The jury found that her last will and testament was the product of undue influence. The effect of the verdict was to distribute the only significant asset of the estate, a 100-acre farm in Stamford, to fifteen nieces and nephews instead of the two nieces named in the will. We reverse and remand for a new trial.

## I.

### *Background*

Mrs. Raedel became the sole owner of the Stamford farm upon the death of her husband in late 1982. Shortly thereafter, she conveyed the farm to her grandniece, Linda Larabee, and Linda's husband, retaining a life estate. About three months later, Mrs. Raedel brought suit for return of the farm. That action was settled and a consent judgment voiding the deed was filed on March 4, 1983.

On January 19, 1984, Lena Raedel, ill with lung cancer, executed her will, naming a niece, Carolyn Calnan, and her husband and another niece, Martha Sands, as residuary legatees. These individuals had cared for Mrs. Raedel during her illness. On February 26, 1984, at the age of 87, Mrs. Raedel died. She left no children or surviving siblings, making her nieces and nephews sole heirs at law.

The thirteen nieces and nephews omitted from the will are the contestants in this case. They claim that Carolyn Calnan "orchestrated" a conspiracy to get the farm. Both sides in the dispute called numerous witnesses to testify as to Mrs. Raedel's state of mind during her final weeks.

The main issue on appeal concerns the court's instructions to the jury. Specifically, the will proponents argue that the judge erred in treating the existence of "suspicious circumstances" surrounding the execution of the will as a question for the jury and in invoking the preponderance of the evidence standard as the applicable standard of proof. Proponents also claim that due to lack of evidence, the court should have directed a verdict in their favor.[1]

## II.

### *Presence of "Suspicious Circumstances"*

■ A court must not substitute its judgment for that of the testator. Accordingly, courts are bound to enforce the intent of the testator as expressed in a valid will. A will should not be enforced, however, if it is shown to be the product of undue influence. "The doctrine of undue influence is applicable when a testator's free will is destroyed and, as a result, the testator does something contrary to his 'true' desires." *In re Estate of Rotax*, 139 Vt. 390, 392, 429 A.2d 1304, 1305 (1981). The burden to prove undue influence is normally placed on those contesting the will. *Id.* That is, the will is presumed proper and enforceable unless its contestants demonstrate sufficient evidence of undue influence.

■ The burden of proof, however, shifts to the proponent of the will "'when the circumstances connected with the execution of the will are such as the law regards with suspicion.'" *Id.* (quoting *In re Collins's Will*, 114 Vt. 523, 533, 49 A.2d 111, 117 (1946)); *In re Estate of Laitinen*, 145 Vt. 153, 159, 483 A.2d 265, 269 (1984). If such circumstances are

---

[1] The proponents further claim the court erred in admitting evidence contrary to the stipulated findings in the litigation between Lena Raedel and Linda Larabee on the grounds of collateral estoppel and judicial estoppel. We find no merit in this claim. The heirs at law here were not parties or privies to the Larabee litigation. See *In re Estate of Leno*, 139 Vt. 554, 557, 433 A.2d 260, 262 (1981) (doctrine of collateral estoppel applies where parties in later action are "substantially identical" to parties in earlier action).

Finally, proponents claim that the repeated expression during closing argument by counsel for the contestants of his personal beliefs constituted plain error. In light of our disposition of this case, we do not reach this claim.

present, the will is presumed to be the product of undue influence, and it will not be enforced unless the proponent persuades the trier of fact that no undue influence attended the execution of the will. *In re Moxley's Will*, 103 Vt. 100, 112, 152 A. 713, 717 (1930). See generally Reporter's Notes, V.R.E. 301, at 326–27 (discussing presumptions that shift the burden of persuasion, known as "Morgan rule" presumptions).[2]

In his instruction to the jury, the trial judge explained that the burden of proof initially was on the will contestants, but shifted to the proponents to prove there was no undue influence if the jury found "suspicious circumstances" surrounding the execution of the will. The court explicitly left to the jury to determine whether or not there were suspicious circumstances. This was error.

The existence of suspicious circumstances is a preliminary question for determination by the court. "Whether there is sufficient evidence to raise a presumption of undue influence must be decided *by the trial court* on a case by case basis." *Estate of Laitinen*, 145 Vt. at 159, 483 A.2d at 269 (emphasis

---

[2] Presumptions in cases of undue influence are not governed by V.R.E. 301, which states the general rule on presumptions in civil cases. Rule 301(a) provides:

> (a) Effect. In civil actions and proceedings, except as otherwise provided by law, a presumption imposes on the party against whom it operates the burden of producing evidence sufficient to support a finding that the presumed fact does not exist, but a presumption does not shift to such party the burden of persuading the trier of fact that the presumed fact does not exist.

Rule 301 adopts what is known as the Thayer or "bursting bubble" rule of presumptions: Only the burden of production shifts; once it is met, the bubble bursts and the presumption has no continuing effect. Contrary to the Rule, when "suspicious circumstances" are present in a case of undue influence, the burden of persuasion also shifts to the will proponents. See *Estate of Rotax*, 139 Vt. at 394, 429 A.2d at 1306; *Haynes v. First National State Bank*, 87 N.J. 163, 176, 432 A.2d 890, 897 (1981). The quantum of proof that must be met by the will proponents in this situation has been held to vary depending on the circumstances. Compare *Haynes* at 177–78, 432 A.2d at 898 ("[O]nce a presumption of undue influence has been established the burden of proof shifts to the proponent of the will, who must, under normal circumstances, overcome that presumption by a preponderance of the evidence."), with *id.* at 183, 432 A.2d at 901 ("[T]he presumption of undue influence created by a professional conflict of interest on the part of an attorney ... must be rebutted by clear and convincing evidence."). The question is not before us in the case at bar, however, and we reserve its resolution for another day.

added). "Whether suspicious circumstances exist is to be determined by the trial court only to establish the burden of proof on the ultimate issue of undue influence." *Estate of Rotax*, 139 Vt. at 394, 429 A.2d at 1306.[3] Here, the court failed to make this determination.

■ Suspicious circumstances are typically present where a testator's fiduciary benefits in the will. See *Kendall's Adm'r v. Roseberry*, 120 Vt. 498, 503–04, 144 A.2d 836, 839 (1958). As long ago as 1898, this Court stated that undue influence may be presumed when relations between testator and beneficiary are suspect, such as

> those of guardian and ward, attorney and client, spiritual advisers and persons looking to them for advice—in fact, all relations of trust and confidence in which the temptation and opportunity for abuse would be too great if the beneficiary were not required to make affirmative proof that he did not betray the confidence placed in him ....

*In re Barney's Will*, 70 Vt. 352, 369, 40 A. 1027, 1033 (1898). In that case, the Court reversed and remanded the probate of a will where the testator gave his estate to the draftsman of the will, an attorney and not an heir at law, and "omitted from the provisions of his will all the persons who were the natural objects of his bounty." *Id.* at 370–71, 40 A. at 1033; see *In re Moxley's Will*, 103 Vt. at 112, 152 A. at 717 (in cases of suspicious circumstances, usually "the beneficiary has

---

[3] Again we note the deviation from V.R.E. 301. Under Rule 301(c)(2), the basic fact (here, the presence of suspicious circumstances) would be submitted to the jury if there were evidence of that fact sufficient to support a finding of its existence and if the will proponents had not met their burden to produce evidence tending to rebut the fact. Even if Rule 301 generally governed here, however, Rule 301(c)(2) would not apply because the will proponents did carry their burden of production. Rule 301(c)(3) would then govern:

> If the evidence of the basic fact is at least sufficient to support a finding of the existence of that fact and if the party against whom the presumption operates has met his production burden, the court shall submit the question of the existence of the presumed fact to the jury on the evidence as a whole without reference to the presumption; provided that, if the court determines that a reasonable juror on the evidence as a whole could not find the existence of the presumed fact, it shall not submit that question to the jury.

Therefore, even if V.R.E. 301(c) applied in this case, the trial court erred in placing the question of the basic fact before the jury.

procured the will to be made or has advised as to its provisions").[4]

Use of the presumption is circumscribed. We have held that the presumption does not apply where the beneficiaries are children or grandchildren. *Estate of Rotax*, 139 Vt. at 393, 429 A.2d at 1306; *In re Mason's Will*, 82 Vt. 160, 166, 72 A. 329, 331 (1909). In such cases, the burden remains on the will contestants throughout.

■ ■ We are likewise reluctant to presume undue influence when the relationship between testator and beneficiaries is one between aunt and nieces and nephews, at least where the beneficiaries do not assist in preparing the will. Here, the evidence showed only that the beneficiaries wanted to inherit the farm, helped care for Lena Raedel during her illness, urged her to seek legal advice regarding her estate, and discouraged the other heirs from contact with their aunt. We hold that these actions, by beneficiaries who were not in a fiduciary relationship with the testator, were insufficient as a matter of law to constitute "suspicious circumstances." The trial court ought to have determined that "suspicious circumstances" were not present, leaving the burden to prove undue influence at all times squarely on the contestants, and instructed the jury accordingly. See *Estate of Laitinen*, 145 Vt. at 159–60, 483 A.2d at 269. The court's instructions impermissibly eased the contestants' burden.

---

[4] Past decisions have sometimes purveyed needless confusion by conflating the preliminary question of "suspicious circumstances" with the ultimate question of undue influence. Thus, in *In re Collins's Will*, 114 Vt. at 533, 49 A.2d at 117, we stated that the presumption of undue influence "is applicable where a relationship of trust and confidence obtains between the testator and the beneficiary, or where the latter has gained an influence or ascendency over the former." See also *In re Moxley's Will*, 103 Vt. at 112, 152 A. at 717 (same language). The quoted language after the disjunctive, however, states a factual condition going to the ultimate issue and does not provide grounds for a presumption of undue influence. The degree of "influence or ascendency" over the testator is properly a fact for the jury, and may support a finding of undue influence. On the other hand, the objective nature of the relationship (e.g. attorney-client) is properly a fact for preliminary determination by the court.

### III.

### Quantum of Proof

The question remains as to what quantum of proof is applicable. The trial court placed on the contestants the burden to prove undue influence by a preponderance of the evidence. Proponents argue that the burden should be to prove undue influence by the higher standard of clear and convincing evidence on the theory that undue influence is "'a species of fraud,'" *In re Barney's Will,* 70 Vt. at 365, 40 A. at 1031 (quoting *Smith's Will,* 95 N.Y. 517, 522 (1884)), and that fraud must be proved by clear and convincing evidence. See *Bardill Land & Lumber, Inc. v. Davis,* 135 Vt. 81, 82, 370 A.2d 212, 213 (1977).

Common law fraud does require clear and convincing proof. *Poulin v. Ford Motor Co.,* 147 Vt. 120, 125, 513 A.2d 1168, 1172 (1986). Undue influence, however, does not necessarily include an element of fraud. See *Kendall's Adm'r v. Roseberry,* 120 Vt. at 502, 144 A.2d at 838 (distinguishing allegations of fraud and undue influence). Fraud, whether actual or constructive, requires "wrongdoing and the conscious participation of the alleged wrongdoer," *id.,* see also *Proctor Trust Co. v. Upper Valley Press, Inc.,* 137 Vt. 346, 354, 405 A.2d 1221, 1226 (1979); undue influence does not. The elements of undue influence include overcoming by means of coercion the sound judgment and free will of the testator so that she does something contrary to her true wishes. *Estate of Rotax,* 139 Vt. at 392, 429 A.2d at 1305; see *In re Everett's Will,* 105 Vt. 291, 315, 166 A. 827, 836 (1933) (actual fraud not a necessary element of undue influence). There is no requirement that the persons responsible for undue influence have a fraudulent state of mind, and none was alleged here.[5]

We hold that, in the absence of fraud, the burden on the contestants of a will is to prove undue influence by a preponderance of the evidence. See *In re Eyman's Estate,* 181 Kan. 90, 98, 309 P.2d 664, 670 (1957).

---

[5] Conversely, procurement of a will by fraud need not involve undue influence, since fraud may be practiced on one not susceptible to undue influence. See *In re Ford's Estate,* 19 Wis. 2d 436, 447, 120 N.W.2d 647, 653 (1963).

486

## IV.

### Directed Verdict

The will's proponents argue that the trial court should have granted their motions for a directed verdict and for a judgment notwithstanding the verdict because there was insufficient evidence of undue influence to make out a prima facie case.

 We must review the evidence in the light most favorable to the nonmoving party and exclude the effect of any modifying evidence. *Sachse v. Lumley*, 147 Vt. 584, 586, 524 A.2d 599, 600 (1987). If there were any evidence "fairly and reasonably supporting the nonmoving party's claim," then denial of the motions was proper. *Id.* The evidence may be circumstantial. *In re Estate of Burt*, 122 Vt. 260, 265, 169 A.2d 32, 35 (1961).

 Viewed in this light, the evidence in this case could support a claim of undue influence. Evidence was offered to show that Lena Raedel was gravely ill and weakened, that the beneficiaries spent considerable time by her side during the days immediately prior to the execution of the will, and that they sought to isolate her from her other heirs. While this evidence did not constitute, as a matter of law, the "suspicious circumstances" which would shift the burden of proof to the will's proponents, as discussed above, it nonetheless was sufficient—albeit by a small margin—to bring the issue of undue influence before the jury.

*Reversed and remanded.*