*Affirmed by 2011 VT 54 (5/20/11)*

FILED

MAY 03 2009

ORANGE SUPERIOR COURT

**STATE OF VERMONT**
**ORANGE COUNTY**

)
**In re: Estate of Orville Tucker**            )            **Orange Superior Court**
)            **Docket No. 248-12-05 Oecv**

## DECISION
### Appellant's Motion for Preliminary Ruling on Burden of Proof

The present question before the court in this probate appeal is whether the presumption of undue influence potentially applies in a case where the proponent of the will was both the daughter of the testator and his legally-appointed guardian.

The relevant facts for the purposes of this opinion are that (1) Orville Tucker's 2004 will benefitted his daughter, appellant Valerie Hausmann, and (2) the 2004 will was executed after Valerie had been appointed by the probate court as Orville's voluntary guardian. Orville's son, Stephen Tucker, has challenged the will on the grounds that the will was the product of undue influence on the part of Valerie.

In the present motion, Valerie seeks a pretrial ruling that contestant Stephen will bear the burden of proving undue influence during the upcoming jury trial. She contends that under Vermont law, the burden of proof with respect to the issue of undue influence always remains upon the contestant, and never shifts to the proponent, in cases where the proponent is the child of the testator. She relies primarily on cases such as *In re Estate of Rotax*, 139 Vt. 390 (1981), for this assertion.

Stephen contends that a presumption of undue influence may be appropriate in this case because Valerie was both a beneficiary of the will and also the legally-appointed guardian of Orville. In addition to these legal arguments, both parties argue that the presumption of undue influence should or should not apply based upon the specific facts of the case.

Courts seek to enforce the intent of the testator as it is expressed in the will. *Eckstein v. Estate of Dunn*, 174 Vt. 575, 579 (2002); *In re Estate of Raedel*, 152 Vt. 478, 481 (1989). This general rule serves the purpose of honoring the testator's wishes as to the disposition of estate property, but application of the rule only makes sense insofar as the will actually represents the testator's intent. The doctrine of undue influence is designed to protect the integrity of the general rule by invalidating wills when it is shown that the testator was induced to execute an instrument that, in reality, represents the intent of someone else. *Landmark Trust (USA), Inc. v. Goodhue*, 172 Vt. 515, 524–25 (2001).

The burden of proving undue influence normally rests with the party challenging the will. *Estate of Raedel*, 152 Vt. at 481. The elements of undue influence require the contestant to show by a preponderance of the evidence that the testator's sound judgment and free will were overcome by means of coercion, and that the will represents something contrary to the testator's true wishes. *Id.* (citing *Estate of Rotax*, 139 Vt. at 392). The influence of the allegedly wrongdoing party must have "destroy[ed] the free agency of the

1

testator at the time and in the very act of making the instrument," *In re Estate of Burt*, 122 Vt. 260, 264–65 (1961), and have been coercion sufficient to "work a substitution of the dominant purpose of the defendants for the free expression of the will of the decedent." *Kendall's Adm'r v. Roseberry*, 120 Vt. 498, 502 (1958).

However, the ultimate burden of persuasion on the issue of undue influence sometimes shifts. A presumption of undue influence may arise in cases where (1) the benefitting party was in a "confidential relationship" with the testator, and (2) there were "suspicious circumstances" surrounding the preparation, formation, or execution of the will. *Eckstein*, 174 Vt. at 579; *In re Will of Collins*, 114 Vt. 523, 533 (1946); Restatement (Third) of Property—Wills and Donative Transfers § 8.3. The presumption is applied where it appears that "a relationship of trust and confidence obtains between the testator and beneficiary," and that "the beneficiary has procured the will to be made or has advised as to its provisions." *Will of Collins*, 114 Vt. at 533; *In re Estate of Laitinen*, 145 Vt. 153, 159–60 (1984). If the presumption applies, it establishes the prima facie existence of undue influence, and is sufficient to defeat the will unless overcome by counterproof that no undue influence attended the execution of the will. *Will of Collins*, 114 Vt. at 533; *Estate of Raedel*, 152 Vt. at 482 n.2.

As to the element of a confidential relationship, courts may presume as a matter of law that a relationship of trust and confidence exists when the beneficiary was in a fiduciary relationship with the testator. *Estate of Raedel*, 152 Vt. at 483. This makes sense because fiduciary relationships, like guardian and ward, are relationships "of trust and confidence in which the temptation and opportunity for abuse would be too great if the beneficiary were not required to make affirmative proof that he did not betray the confidence placed in him." *Id.* (quoting *In re Barney's Will*, 70 Vt. 352, 369–70 (1898)).

On the other hand, Vermont law establishes that a mere parent-child relationship, without more, does not give rise to a "confidential relationship" even when the child who benefitted was "the adviser of the parent, and had the control and management of his affairs." *Burton's Adm'r v. Burton*, 82 Vt. 12, 17 (1909). This rule also makes sense because it is common for a relationship of trust and confidence to arise between parents and their children, and for adult children to begin to manage the affairs of their parents as they grow older. See *In re Estate of Sensenbrenner*, 278 N.W.2d 887, 892 (Wis. 1979) (explaining that it is difficult for courts to determine "the point at which the amount and kind of assistance which a child renders to its parent makes the child a confidential advisor"). In these circumstances, Vermont law has expressed a preference against requiring children to "explain the gift" or "show the fairness" of their parents' actions. *Burton*, 82 Vt. at 17. A number of cases have explained this preference by stating that the presumption of undue influence does not apply when the beneficiaries are children or grandchildren of the testator. *Eckstein*, 174 Vt. at 579; *Estate of Raedel*, 152 Vt. at 484; *Estate of Rotax*, 139 Vt. at 393.

However, none of the aforementioned Vermont cases have involved a situation where the beneficiary of a will was both the child of the testator and the testator's legally-appointed guardian. The closest match is *Burton*, where the child had become the "adviser" of the parent, and "had the control and management of [her] affairs," but there is no indication that any fiduciary relationship existed, or that the legal relationship between the testator and beneficiary was anything other than parent and child.

2

When a daughter is appointed as her father's legal guardian, the atmosphere of trust and confidence between parent and child does not arise solely from the parent-child relationship and the natural inclination of children to tend to their parent's affairs, but also arises as a legal and fiduciary obligation by virtue of the guardian-ward relationship. In other words, even if a confidential relationship should not be found solely by virtue of a parent-child relationship, a bright line is crossed when the child *actually* assumes fiduciary responsibility for her parent's well-being—as when the child has been appointed a legal guardian. Under those circumstances, the legal responsibilities attendant to the guardian-ward relationship should prevail. Application of the presumption of undue influence is appropriate when a fiduciary relationship is legally present because "the temptation and opportunity for abuse would be too great if the beneficiary were not required to make affirmative proof that he did not betray the confidence placed in him." *Estate of Raedel*, 152 Vt. at 483 (quoting *In re Barney's Will*, 70 Vt. 352, 369–70 (1898)).

In this case, Valerie was legally appointed as Orville's guardian prior to the execution of the will. Because the appointment gave rise to fiduciary obligations on the part of Valerie, and because the provisions of the will benefitted her, the court concludes that a "confidential relationship" existed between Valerie and Orville in this case.

This does not mean that any presumption of undue influence has arisen, or that the burden has shifted. It is still necessary for the court to determine whether or not the will was executed under "suspicious circumstances." See, e.g., *Will of Collins*, 114 Vt. at 533–34 (explaining that the presence of a "confidential relationship" alone is not sufficient to raise a presumption of undue influence in the absence of "suspicious circumstances"). The question of whether suspicious circumstances were present, and whether the burden of proof should therefore be shifted, can only be determined by the court after hearing the evidence presented at trial. "Whether there is sufficient evidence to raise a presumption of undue influence must be decided by the trial court on a case by case basis." *Estate of Raedel*, 152 Vt. at 482 (quoting *Estate of Laitinen*, 145 Vt. at 159).

For the foregoing reasons, appellant Valerie Hausmann's motion for a preliminary ruling that appellee Stephen Tucker bears the burden of proving undue influence is *denied*. The court reserves ruling on the factual question of whether suspicious circumstances are present in this case. The determination as to who will bear the ultimate burden of proof on the issue of undue influence will be determined by the court after hearing the evidence presented at trial.

## ORDER

For the foregoing reasons, appellant Valerie Hausmann's Motion Regarding Burden of Proof (MPR #14), filed Mar. 26, 2008, is *denied*.

Dated at Chelsea, Vermont this 8th day of May, 2009.

Hon. Mary Miles Teachout
Superior Court Judge

3